IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'23 SEP 13 AM 9:35

| | |
|---|---|
| JUAN RANDOLPH, ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 1:22-cv-1105-LKG |
| v. ) | |
| ) | Dated: September 11, 2023 |
| OFFICER MRS. PALE, *et al.*, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

In this civil rights action filed under 42 U.S.C. § 1983, inmate Juan Randolph challenges an injury he received to his finger while incarcerated at Western Correctional Institution ("WCI"), and his subsequent medical care for that injury. ECF Nos. 1, 4, 10, 15. As Defendants, Randolph names Officer Mrs. Pale, Officer Mrs. Skully, and Officer Conner (collectively the "Correctional Defendants"), as well as Nurse Burnice Mace[1] and Dr. Asresahegn Getachew (collectively the "Medical Defendants"). ECF Nos. 1, 4, 10, 15, 29. Randolph also named Nurse Elizabeth Nicolas as a Defendant, but she has not yet been served in this matter.[2] ECF Nos. 29, 53.

On March 31, 2023, the Correctional Defendants moved to dismiss the Complaint, or alternatively for summary judgment to be granted in their favor. ECF No. 44. That same day, the Medical Defendants filed a similarly styled Motion. ECF No. 45. The Clerk of the Court notified Randolph of his right to respond. ECF Nos. 47, 48. Randolph filed a response on April 13, 2023.[3] ECF No. 51. After reviewing the pleadings, the Court has determined that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, the Correctional Defendants' and Medical Defendants' Motions, construed as motions for summary judgment, will be granted.

---

[1] Defendant Burnice Swan is the former name of Burnice Mace. ECF No. 45-1 at 4. The Clerk will be directed to update the docket to reflect Mace's current name.
[2] For the reasons discussed *infra*, the claims against Nurse Elizabeth Nicolas will be dismissed.
[3] Randolph does not specifically indicate whether he is responding to the Correctional or Medical Defendants' Motion. As such, the Court will interpret the filing as responsive to both Motions.

I.   BACKGROUND

A.   **Randolph's Allegations**

Randolph has filed a series of supplements to his original Complaint. ECF Nos. 1, 2, 4, 10, 15, 29. Some of these documents were filed at the Court's direction, and others of Randolph's own volition. Because Randolph proceeds pro se, the Court will recount all information presented by Randolph, and construes all facts in the light most favorable to him.

Randolph's original Complaint alleges that, while housed at WCI, he was standing near the door of his cell when the door opened unexpectedly and his hand "got chopped" and was "split between the door and the wall." ECF No. 1 at 2. He indicates that he had to go to the medical unit to have his finger examined, and that he experienced "excruciating" pain with "no movement" in his finger. *Id.* He states that he did file a grievance with WCI about this issue, but "nothing was done about it." *Id.* at 3. In his first supplement, Randolph indicates that he was moved from WCI to the Maryland Correctional Institution in Hagerstown ("MCI-H"). ECF No. 2-1. In his second supplement, Randolph adds the following information:

> Ms. Pale had my cell door opened without me knowing and had my hand get stuck in the door. My finger was severely damaged to the point where it is disfigured; my finger is damaged so bad WCI took [pictures] of my fingers and hid me in isolation then sent me out the jail and transferred me. Also medical did not adequately treat my finger properly. I tried to get an x-ray of my finger and told them my finger was on the verge of fall[ing] off!

ECF No. 4 at 2. Randolph also adds the following in the margins of his supplement: "(officers) the sergeant lady, Ms. Skully Ms. Connur and Ms. Pale." *Id.* Randolph states that he filed a grievance regarding this issue but "WCI did not respond and told me they ripped up my grievances." *Id.* After reviewing the information provided to this point, the Court directed Randolph to file an Amended Complaint. ECF No. 7. Instead, however, he filed two additional supplements.

In his third supplement, Randolph again reiterates that Officer Pale unexpectedly opened his door, resulting in injury. ECF No. 10 at 2. He adds that, after seeing his injury, Pale stated "don't blame me." *Id.* He states that Officers Pale, Skully, and Conner did not assist him, and "laughed at [his] pain!" *Id.* He also adds that "Nurse Elizabeth did not order for [him] to go to outside hospital" for treatment following his injury. *Id.* Again, he states his grievances were ignored. *Id.*

In his fourth supplement, Randolph again reiterates many of the same facts as his previous filings. ECF No. 15.  He adds that following the injury, Officers Skully and Conner told him to "stop crying like a baby." *Id.* at 2.  He again states that Nurse Elizabeth did not send him to an outside facility for treatment, and avers that this led to him getting "injured more in the kitchen cuz I couldn't hold nothing with my right hand and dropped hot water on my foot." *Id.* He states that officers "threw his grievance away" regarding this incident. *Id.*

On November 9, 2022, this Court issued an order directing the Office of the Attorney General to provide Plaintiff with his medical records such that he might be able to assist with identifying Nurse Elizabeth for purposes of service of process. ECF No. 25.  After receiving his medical records, the Court afforded Randolph a final opportunity to supplement his Complaint naming any additional medical defendants he determined through review of the records. *Id.*  On December 5, 2022, Randolph filed his final supplement. ECF No. 29.  He states: "Here I am mailing the proof of medical malpractice of Dr. Getachew who did not make the call for me to go out to hospital and also Nurse Burnice L Swan for not properly treating my finger also Nurse Elizabeth Nicolas for not doing her job properly." *Id.* at 1.

With his final supplement, Randolph includes medical records from April 30, 2022. ECF No. 29-1.  The records indicate that Randolph was seen by Burnice Mace, RN, and reported his finger was "caught in the slot of cell door." *Id.*  Bleeding and a "superficial" injury to the skin were noted, but no infection was seen. *Id.*  A subsequent record from May 1, 2022 indicates that Randolph saw Nurse Elizabeth Nicolas and reported: "I was helping my tier officer with something when I accidentally jammed my finger against the door." *Id.* at 2.  A laceration to the right ring finger with redness, tenderness, and swelling was noted, but no bleeding was observed. *Id.*  Nurse Nicolas contacted the provider, Dr. Getachew, who started an antibiotic, directed that an x-ray be obtained the following day, and directed that "if pus [was] noted, culture the pus." *Id.* at 3.

### B. The Correctional Defendants' Motion

The Correctional Defendants argue that Randolph has failed to state a cognizable Constitutional claim against them. ECF No. 44-1.  Additionally, they argue that Randolph has failed to exhaust his administrative remedies. *Id.* at 8.  Finally, they argue that Defendant Officer Pale is entitled to statutory immunity for any state law claims. *Id.* at 12.

3

The Correctional Defendants include a declaration from Jason D. Clise, Correctional Case Management Specialist II and Litigation Coordinator at WCI. Decl. of Jason D. Clise, ECF No. 44-2. Clise avers that Randolph only filed one administrative remedy procedure ("ARP") or grievance during his time at WCI, and it concerned a check not being processed properly. *Id.* He did not file a grievance related to his hand injury. *Id.*

The Correctional Defendants also include a declaration from Stevi Ambrose, an administrative officer for the Inmate Grievance Office ("IGO"). Decl. of Stevi, Ambrose, ECF No. 44-3. Ambrose avers that Randolph filed a grievance with the IGO related to his hand injury on May 20, 2022. *Id.*, *see also* ECF 44-4 at 3. The grievance was reviewed and dismissed by the IGO because Randolph failed to include the appropriate paperwork that supported his exhaustion of the Administrative Remedy Procedure. ECF No. 44-3; *see also* ECF No. 44-4 at 1-2. Randolph was given an opportunity to cure the defects with his IGO grievance, but failed to do so. ECF No. 44-3.

### C. The Medical Defendants' Motion

The Medical Defendants argue that they are entitled to summary judgment because they were not deliberately indifferent to Randolph's serious medical needs.[4] ECF No. 45-1 at 11. In support thereof, they include relevant portions of Randolph's medical records, as well as a declaration from Defendant Dr. Getachew. ECF Nos. 45-4, 45-3.

Randolph's medical records reflect that he was seen by Defendant Burnice Mace on April 30, 2022, following his finger injury. ECF No. 45-4 at 31-35. Mace's examination showed a "superficial cut to the pad of right hand ring finger" and bleeding. *Id.* at 31-32. Mace applied pressure to stop the bleeding, cleaned the wound, prepared the skin, applied steri-strips, and covered everything with a band-aid. *Id.* at 32-33. She educated Randolph to keep the wound clean and dry, to allow the steri-strips to fall off on their own, and then to remove band-aids after 3-4 days to allow the wound to be exposed to the air. *Id.*

---

[4] The Medical Defendants note that, at the time of the filing of their Motion, Randolph's allegations against them were contained within a sealed pleading. ECF No. 45-1 at 3. However, they filed their Motion "out of an abundance of caution even though they do not possess the pleading containing the allegations against them" because they maintain that "[t]here is nothing in the medical records or evidence showing that Dr. Getachew or RN Mace were deliberately indifferent to Plaintiff's hand injury, and summary judgment is appropriate." *Id.* at 3-4. The Court unsealed the relevant document and afforded the Medical Defendants an opportunity to supplement their Motion for Summary Judgment, if they felt it was necessary, in light of the newly unsealed information. ECF No. 49. Despite this opportunity, the Medical Defendants filed nothing further.

4

Thereafter, on May 1, 2022, Randolph saw Defendant Elizabeth Nicolas for his finger injury. *Id.* at 36-37. Randolph walked independently to the appointment, he was alert and oriented with unlabored breathing, and his vital signs and heart rate were within normal range. *Id.* at 36. Randolph complained of severe pain in his finger, but no bleeding was noted. *Id.* Nicolas noted the finger was red and swollen and Randolph could not fully bend or straighten the finger. *Id.* Nicolas contacted the on-call provider, Dr. Getachew, who prescribed Bactrim, an antibiotic, for the wound, and ordered an x-ray for the following day. *Id.* at 37. Nicolas started the antibiotic immediately and added Randolph to the treatment list for daily wound care. *Id.*

Dr. Getachew asserts that the care provided by both Mace and Nicolas was medically appropriate. ECF No. 45-3 at 5. He states that "[Mace] provided appropriate and correct nursing care for treatment of the laceration. Nicolas performed a proper nursing assessment and then contacted me for further orders." *Id.* Further, he avers that his orders following the call from Nicolas were appropriate because "[d]ue to the nature of the patient's injury, an infection was a potential concern, and an antibiotic should be prescribed after such an injury to help prevent infection. The order for an x-ray was also appropriate to determine whether the finger was fractured and if so, the degree of any fracture." *Id.*

On May 2, 2022, Randolph received an x-ray of his finger. ECF No. 45-4 at 260. The x-ray revealed "irregular lucencies" and "minimal displacement" of Randolph's finger. *Id.* The radiologist determined the finger was "minimally displaced" with a "comminuted tuft avulsion." *Id.* According to Dr. Getachew, "[b]ased on the records, the patient's finger has fully healed, and he has full function and range of motion in his finger." ECF No. 45-3 at 3.

On May 9, 2022, Randolph was transferred from WCI to MCI-H. *Id.* at 5. Dr. Getachew had no further involvement in Randolph's care beyond that point. *Id.* at 6.

### D.     Randolph's Response

In response, Randolph again asserts that Officer Pale violated prison procedures and unexpectedly opened his cell door, causing injury to his finger. ECF No. 51 at 1. He states that Pale stated "don't blame me" and told him the tier phone was broken so she could not call medical. *Id.* at 2. He states that Officers Skully and Conner also denied his requests to go to the medical unit, but another unidentified officer eventually allowed him to go. *Id.*

Upon his arrival, Randolph states that he repeatedly asked Nurse Mace to x-ray his finger but was denied. *Id.* He states that Mace attempted to wrap his finger, but in doing so, caused

5

further pain. *Id.* He asserts that this amounts to "inadequate treatment and gross negligence." *Id.* He states that WCI's mishandling of his finger injury led to further injuries, such as an incident which occurred in the kitchen when he dropped hot water on his foot. *Id.* at 4. He states that he complained about his treatment and was subsequently transferred to another prison. *Id.*

## II.  STANDARD OF REVIEW

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor. Such motions implicate the court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Randolph was placed on notice that Defendants sought summary judgment (ECF Nos. 44, 45, 47, 48) and submitted his own record evidence for the Court's consideration. ECF No. 51. Accordingly, the Court considers the sufficiency of the claims under the summary judgment standard. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must

'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

The Correctional Defendants raise the affirmative defense that Randolph has failed to exhaust his administrative remedies. If Randolph's claims have not been properly presented through the administrative remedy procedure they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust.

*Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland prisons, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 2.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 635. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* But, it reiterated that "[a] prisoner need not exhaust

8

remedies if they are not 'available.'" *Id.* at 636. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at 725.

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, Randolph is subject to the strict requirements of the exhaustion provisions. *See Porter*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, the record reflects that Randolph only filed one ARP or grievance during his time at WCI, and it concerned a check not being processed properly. ECF No. 44-2. He did not file a grievance related to his hand injury. *Id.* Randolph's bald, unverified assertions in his original Complaint and subsequent supplements that his ARPs were "ignored" are insufficient to create a dispute of material fact on this point. *See* ECF Nos. 1, 4, 10, 15. Randolph provides no approximate dates when his ARPs were supposedly submitted, nor does he provide any supporting details about who accepted them, or whether he followed up on his submissions.

However, even if the Court assumes, *arguendo*, that Randolph's efforts to file an ARP at WCI were ignored by correctional officers, the record reflects that Randolph failed to completely

9

pursue his administrative remedies. It appears that Randolph filed a grievance with the IGO related to his hand injury on May 20, 2022. *Id.*, *see also* ECF 44-4 at 3. The grievance was reviewed and dismissed by the IGO because Randolph failed to include the appropriate paperwork that supported his exhaustion of the Administrative Remedy Procedure. ECF No. 44-3; *see also* ECF No. 44-4 at 1-2. Randolph was then given an opportunity to cure the defects with his IGO grievance, but failed to do so. ECF No. 44-3. At that point, Randolph could and should have expressed any issues related to pursuing his grievances at WCI, but he failed to file anything further.

Thus, the record clearly reflects that Randolph did not exhaust his administrative remedies, and accordingly, all claims against the Correctional Defendants must be dismissed without prejudice.

### B. Inadequate Medical Care

Construed liberally, Randolph has asserted that the Medical Defendants and Nurse Nicolas provided constitutionally inadequate medical care in violation of his Eighth Amendment rights. In order to state an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical

10

malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844.

### a. Dr. Getachew and Nurse Mace

Dr. Getachew and Nurse Mace, the Medical Defendants, concede that Randolph's finger injury was an objectively serious medical need. ECF No. 45-1 at 11. However, the record reflects that the Medical Defendants did not act with deliberate indifference to Randolph's injury. Randolph was seen by Defendant Mace in medical shortly following his injury. ECF No. 45-4 at 31-35. Mace applied pressure to stop the bleeding, cleaned the wound, prepared the skin, applied steri-strips, and covered everything with a band-aid. *Id.* at 32-33. She educated Randolph to keep the wound clean and dry, to allow the steri-strips to fall off on their own, and then to remove band-aids after 3-4 days to allow the wound to be exposed to the air. *Id.*

Thereafter, on May 1, 2022, Randolph saw Defendant Elizabeth Nicolas for his finger injury. *Id.* at 36-37. Randolph ambulated independently to the appointment, he was alert and oriented with unlabored breathing, and his vital signs and heart rate were within normal range. *Id.* at 36. He complained of severe pain in his finger, but no bleeding was noted. *Id.* Nicolas noted that the finger was red and swollen and Randolph could not full bend or straighten the finger. *Id.* Nicolas contacted the on-call provider, Dr. Getachew, who prescribed Bactrim, an antibiotic, for the wound, and ordered an x-ray to occur the following day. *Id.* at 37. Nicolas started the antibiotic immediately and added Randolph to the treatment list for daily wound care. *Id.* The following day, Randolph received an x-ray of his finger as ordered by Dr. Getachew. ECF No. 45-4 at 260.

Based on this record, the Medical Defendants were not deliberately indifferent to Randolph's medical needs, and indeed, they took reasonable steps to treat his injuries. Randolph's summary allegations that Dr. Getachew "did not make the call for me to go out to

11

hospital and also Nurse Burnice L Swan for not properly treating my finger" are insufficient to demonstrate deliberate indifference. ECF No. 29. At best, this amounts to a disagreement with the care rendered, which is insufficient to demonstrate deliberate indifference. The Medical Defendants are thus entitled to summary judgment.

### b. Nurse Elizabeth Nicolas

Defendant Nicolas was never served in this action. However, Randolph's claims against her will be dismissed pursuant to 28 U.S.C. § 1915A. Because Randolph is an inmate proceeding *in forma pauperis*, the Court reviews the allegations against Nicolas to assess whether Randolph has stated a plausible claim for relief against her. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).

Nurse Nicolas is mentioned for the first time in Randolph's third supplement, where he states only that "Nurse Elizabeth did not order for [him] to go to outside hospital" for treatment following his injury. ECF No. 10 at 2. In his fourth supplement, Randolph again states that Nurse Elizabeth did not send him to an outside facility for treatment and avers that this led to him getting "injured more in the kitchen cuz I couldn't hold nothing with my right hand and dropped hot water on my foot." ECF No. 15 at 2. Finally, he states that Nurse Nicolas did not do "her job properly." ECF No. 29 at 1.

Even construing these allegations liberally and in the light most favorable to Randolph, they fail to plausibly allege that Nurse Nicolas acted with requisite deliberate indifference to state a claim for constitutionally inadequate medical care. Thus, all claims against Nurse Nicolas are dismissed pursuant to 28 U.S.C. § 1915A.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, or in the Alternative, for Summary Judgment, construed as motions for summary judgment, will be GRANTED (ECF No. 44, 45). Claims against Nurse Elizabeth Nicolas are dismissed. The Motion to Withdraw attorney Damon Pace's appearance will be GRANTED (ECF No. 39).[5]

A separate Order follows.

LYDIA KAY GRIGGSBY
United States District Judge

---

[5] This Motion was filed March 2, 2023. ECF No. 39. Counsel for the Office of the Attorney General, Laura Mullally, who represents the Correctional Defendants, moved to withdraw the appearance of Assistant Attorney General Damon A. Pace as she was now representing the Correctional Defendants. Having reviewed the motion, and finding good cause shown, it shall be granted.

12